Good morning, Your Honors. May it please the Court. The IJ failed to provide an opportunity to explain at least six of the alleged discrepancies and implausibilities in this case. These include the allegedly implausible reference to a prior warning during the second arrest, the alleged inconsistency regarding the location of the third arrest, the alleged discrepancy between the facial injury and the dates of the medical report, the alleged discrepancy regarding the cause of the facial injury, the alleged discrepancy that Mr. Avdalyan didn't go to a doctor for his pelvic injury, although he did go to a doctor for his facial injury, and the fact that the prior application for refugee status that was filed in Moscow did not specifically mention the arrest. This Court has clearly held that an IJ is required to give a reasonable opportunity to explain any perceived discrepancies pursuant to Chen v. Ashcroft and Kumar v. Gonzales. In addition, the IJ relied on several minor discrepancies which the government has conceded do not – are not material to the asylum claim. This includes the dates of the baptism and the marriage, the last names of the two brothers he was arrested with, and the last name of his distant mother. The IJ is not required to say, well, I see inconsistencies between X and Y, let's have an explanation, or what does he do? He should confront the applicant with the inconsistency so that he can explain it. In this case, he was never even confronted. These discrepancies were not brought to his attention. The only one of these where the IJ even asked a single question pertains to the location of the third arrest, and there the IJ simply asked how long he rode in the car on his way to the police station. It was never even brought to his attention that there was a discrepancy. Both times he had testified that he was arrested on his way, and where exactly he was on his way when he was arrested was never brought to his attention as a discrepancy. And with respect to the prior application, the contents of that prior application were never discussed at all, not on direct exam, not on cross exam, so it was never even mentioned. Nobody ever asked him why he didn't include his arrests. What cases do you have that support that proposition? That he must be confronted? Well, in Chen v. Ashcroft, the Court explains that if he's not confronted, if he's not given an opportunity to explain, then the Court is left to speculate about what we – about the reasons for the inconsistency. And that's the exact same situation we have here. We can speculate that there may have been a translation error. We can speculate that he, for whatever reason, he didn't include his arrests or include an arrest. Perhaps he feared including it for some reason. But we are left to speculate about that. And that's the problem when a person is not given an opportunity to explain. Also, in the person's mind – Didn't some of the – didn't the inconsistency about the circumstances of his arrest come in testimony before the I.J. once on direct and then on – later? Are you – So you're saying in those – even within the same proceeding, there has to be – now that they've established the inconsistency, the question is establish the inconsistency, then there's got to be a confrontation on it? I believe that that instance that you're referring to, Your Honor, is the third arrest regarding the location of his third arrest. And that was the one I was just talking about where you're correct. He did say something on direct. He said he was arrested on his way to the station when he was about to enter. Then on redirect, he said that he was testified on his way to the station, but that he was picked up in the car halfway there and taken to the station. So my point there is that in his mind and in my mind, there's really no inconsistency there. He may have omitted the first time, stating that he was taken in a car part of the way, but an inconsistency was never brought to his testimony – brought to his attention there, excuse me. And even if there was in that instance some minor discrepancy as to exactly where on his route he was arrested, that would certainly be minor. Was there some discrepancy on the extent of the duration of his being detained? Say he was released – first said he was released immediately, and then after that he was held for two and a half days. I believe that's a discrepancy that the government noted in its brief, but it's not one on which the I.J. relied in his decision. So it's not something that's supporting the I.J.'s credibility finding in this case. When he was interviewed in Moscow, was he being interviewed with asylum in mind? Yes, he submitted an application for a refugee status for asylum. At the American Embassy? Correct. And he wasn't under any pressure or duress or anything then, was he? He testified that he was, Your Honor, because he had an Armenian translator with him, and then there were actually two translators, from Armenian to Russian, and then from Russian into English. And he testified that he was not comfortable during that procedure. He stated that he didn't feel safe. This is on page 162 of the record. He stated it's not safe to talk about these very good contacts with Moscow law enforcement. Well, he was talking to an American agent. He wasn't talking to KBG then. That's correct, but he was using an Armenian interpreter, and on page 160, that's what he indicates as the source of his fear, is that he was using an Armenian interpreter who he feared would inform the Armenian police about any abuses that he reported. And he stated on page 159 to 160 that he didn't find the interpreter helpful at all, that he didn't trust the interpreter. And this Court has held that an asylum interview is not really a reliable point for inconsistencies in testimony. In Jarnail Singh v. Gonzales, for example, the Court listed numerous features of an asylum interview that make it an unreliable point of comparison, and many of the factors considered in that case were also present here. For example, the officer who interviewed him in Moscow certainly never testified in this case. The translator was not a professional. We don't know if he was ever given an opportunity to comment on the evidence or on the summary of the interview. So there are numerous problems with that Moscow interview. So in addition, except for these minor discrepancies, and these discrepancies where he was not given an opportunity to explain, we're left with really only a handful of credibility issues. This includes the locations of the first two arrests, and the alleged discrepancy between his back and pelvic injury, and seeking treatment for that injury, and also whether his employment history casts any doubt on the cause of that injury. Now, with respect to the locations of the two arrests, I.J. failed to give any cogent reason for disbelieving his explanation that Pastor Hayek's house was the same as Samuel's house, or that Varuz's house was connected to Pastor Hayek's house. In addition, this Court has held that the location of an arrest is not material to an asylum claim. In Singh v. Ashcroft, for example, there was inconsistencies about the location of a political rally. And the Court found that the material point was that the petitioner had attended the rally, not the location of the rally. And the same thing here, Your Honors. The point is that he was arrested while he was involved in a religious service. Whose house the religious service happened to be at that week really is not material to his asylum claim. In Banderi v. INS, likewise, the Court held that the location of persecution is not material. With regard to the alleged discrepancy between a broken back and pelvis, it's true that Mr. Abdalion initially testified that he had, quote, broken his back. But he quickly clarified on direct exam without prompting that he had actually broken his pelvis. He also, it's also perfectly understandable that a layman like him would characterize his back as broken when his entire backside was in pain. Finally, that can't be seen as an attempt to enhance his claim, and it therefore has no bearing on credibility. A broken back is no more severe than a broken pelvis. Also, just, I would like to note that the lowest part of the back actually forms the back wall of the pelvis. So there's really no, there's no even, there's not necessarily even a medical discrepancy, much less in layman's terms. Thank you. Thank you. May it please the Court. Michael Gray on behalf of the Attorney General. The immigration judge in this case found that Mr. Abdalion's claims of past persecution on account of his religion were not credible. The standard this Court is statutorily required to apply in reviewing that determination is extremely deferential to the IJ's credibility determination. Only if the evidence in the record confirms that Mr. Abdalion's claims of past persecution compels the contrary conclusion. Only if it compels the finding that Mr. Abdalion's testimony was credible may this Court reverse the immigration judge's finding. Mr. Abdalion has not demonstrated that the evidence compels that conclusion. Although you do concede some of the grounds the IJ cited were not proper. Are you referring to the dates, the dates and discrepancies? Not material. Those are not material. If you read the immigration judge's decision he doesn't rely on those directly. He notes them in passing as inconsistencies and certainly those did not form the basis of his adverse credibility determination. But even I think those types of minor inconsistencies when combined with the much larger inconsistencies relating to the circumstances surrounding the arrest and his injuries sort of fit into the pattern of past doubt on his credibility as a whole. I asked counsel about the discrepancy between the duration of his detention, which from the record reading it looks like he was giving two different accounts of that. One was an immediate release and the other was a two-day detention. Do you agree that the IJ did not invoke that as a reason? The IJ did not specifically address that in his oral decision. That's correct. But I don't believe there's any standard in the regulation nor in the statute of articulation on the part of the IJ. Certainly those types of inconsistencies when combined with the inconsistencies that the IJ did rely on can factor into an adverse credibility determination and this Court's review is of whether the evidence compels a contrary conclusion and when there are those kinds of non-invoked inconsistencies certainly record evidence doesn't compel a conclusion that in fact he was testifying credibly. Well, now wait a minute. Just let me test what you're suggesting we should approach or we should follow. Let's assume that all of the grounds on which the IJ, many grounds that he did invoke, none of them holds up because they didn't go to the heart of the claim or whatever but there is in the record a glaring inconsistency between the immediate release and a two-day detention which does seem material and go to the heart of the claim. Are you suggesting that we should de novo look at the record and justify an adverse credibility finding to supplant what the IJ invoked and find in the record something that he did not invoke and use that? I'm not certain whether the Court would need to go that far. It certainly doesn't need to go that far in this case because there are so many inconsistencies but I do think that non-invoked inconsistencies can support an adverse credibility determination because of the standard of review. What the statute says is whether on the record evidence any reasonable adjudicator would be compelled to find to the contrary. Certainly if the Court looks at the evidence and determines that in fact there are material inconsistencies that weren't invoked then I don't think it can reach the conclusion that it must be compelled to find that the Petitioner was credible. In response to the non-confrontation argument the two cases that the Petitioner relies on are the Chin and Guo case. In Chin there was reason to believe that the Court noted that there may have been some errors in translation. There was a lot of difficulty in the translation and of course you can't base an adverse credibility finding in that situation without asking and seeking to clarify and in Guo there were multiple possible interpretations of the testimony that the IJ relied on to make his adverse credibility finding and the Court said when you have that situation with multiple possible interpretations you need to ask to clarify before making an adverse credibility finding. In this case it's not like that. There are multiple inconsistencies where for example Mr. Abdalyan told the asylum officer that he was arrested at Brother Samuel's house for the first arrest and then he was arrested at Brother Baruj's house for the second arrest but then in the immigration hearing before the IJ he testified that he was arrested both times at Pastor Hayek's house and those sorts of material inconsistencies there's no reason for the IJ as Judge Fletcher said to have to confront every time and say wait I find an inconsistency here can you explain it? Instead that sort of confrontation burden only comes up when the IJ looking back at the testimony makes an adverse credibility finding based on testimony that could be interpreted in multiple ways. Here you have material inconsistencies in the testimony. If there are no further questions I would urge the Court. I have a question. It seemed to me that the IJ and the BIA were clearly wrong on saying that the CAT claim could be decided on the basis of the credibility. Well there are two points. First the CAT claim was not raised before the BIA. Well it was in the notice of appeal or the brief they said that they were appealing that and the cases seem to say that's enough. Well certainly in the brief that they filed they did not raise it as an issue before the BIA. I'd have to check the record on the notice of appeal but even if raised the board and the immigration judge are not required to make separate findings on a CAT claim and a withholding claim if there's not separate evidence. It's the petitioner's burden to come forth with some differentiated evidence. The only evidence in this case was his testimony. That related to both his withholding claim, his asylum claim and his CAT claim. There's no independent evidence that goes directly to the CAT claim and that is when this Court has said that the immigration judge has to make differentiated findings when there's differentiated evidence. Here there was no differentiated evidence. He said for the same reasons. That's right. He said I find that your testimony is not credible and that I find that I don't even believe you've been arrested once and there was no other evidence available for him to make any sort of finding on. So he said for the same reasons because that evidence is not credible I find that your CAT claim. Was the country report in? I believe it was. Yes. They would need to look at that. It seems to me that they have an obligation to say that there is no possibility of torture in this situation. That's their obligation. Well I think that the immigration judge discharged that by saying that I find that you are not arrested you are not beaten and therefore there's no possibility of torture. Certainly the country report doesn't indicate if you read it that there's any possibility of torture in this type of situation. I would ask that the court deny the petition for review because Mr. Abdalyan's testimony does not compel the conclusion that he testified credibly and the immigration judge was therefore correct. Thank you. There's just a couple points I wanted to make, Your Honors. It was presented to the BIA. The relevant case is Zhang, I believe, where this court held that simply mentioning it in the brief as an issue for which you're seeking relief is sufficient to preserve the claim. That's Zhang v. Ashcroft. And in this case it was mentioned. It is not extensively argued in the brief but it's certainly mentioned that that issue is being appealed. So I don't think there's any failure to exhaust that issue. In addition, this court has held that country conditions alone can be decisive in granting cat relief. And so that issue certainly was not addressed by the IJ. And with respect to the opportunity to explain, not only is the IJ supposed to confront him and give him an opportunity to explain but he is also supposed to address that explanation. That certainly wasn't done here. Thank you, Your Honors. Thank you. We thank counsel for their argument. And we end the case.
judges: Goodwin, B. Fletcher, Fisher